UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE E. RAMIREZ ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. ED CV 13-960-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On May 31, 2013, plaintiff Wayne E. Ramirez filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") provided sufficient reasons to reject plaintiff's subjective symptom testimony in assessing his residual functional capacity ("RFC"). P. Mem. at 3-11.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly discounted plaintiff's credibility.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-nine years old on his alleged disability onset date, has a high school education and attended mechanic school. AR at 170, 185, 190. Plaintiff has past relevant work as a logistics specialist and vendor. *Id.* at 60-61, 186.

On December 31, 2009, plaintiff filed applications for a period of disability, DIB, and SSI due to degenerative disc disease, osteoarthritis, asthma, and high blood pressure. *Id.* at 170-75, 185. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 69-84.

On February 24, 2012, plaintiff, represented by counsel, testified at a hearing before the ALJ. *Id.* at 41-64. The ALJ also heard testimony from plaintiff's wife and a vocational expert. *Id.* at 55-63. On March 14, 2012, the ALJ denied plaintiff's application for benefits. *Id.* at 25-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability, August 20, 2008. *Id.* at 27.

At step two, the ALJ found that plaintiff suffered from the following severe

impairments: degenerative disc disease of the back with congenital fusion in the neck and obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, considered individually and in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 30.

The ALJ then assessed plaintiff's RFC,[1] and determined that he had the RFC to perform medium work with the following limitations, that plaintiff: may perform postural activities only occasionally; is precluded from climbing ladders, ropes, or scaffolds; and is precluded from unprotected heights or dangerous machinery. *Id.* at 30.

The ALJ found, at step four, that plaintiff was capable of performing past relevant work as a logistics specialist and vendor. *Id.* at 34-35. Consequently, the ALJ found that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 35.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4, 21. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends that the ALJ failed to make a proper credibility determination. P. Mem. at 3-14. Specifically, plaintiff contends that the ALJ did

not provide clear and convincing reasons that were supported by substantial evidence for discounting plaintiff's credibility. *Id.* This court agrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

impairments could reasonably be expected to cause the symptoms alleged. AR at 31. At the second step, because the ALJ did not find any evidence of malingering, the ALJ must provide clear and convincing reasons for finding plaintiff less credible. Here, the ALJ found plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was undermined by the following: (1) plaintiff received routine, conservative treatment, using only over-the-counter medication to alleviate his pain; (2) plaintiff did not seek treatment until one year after his alleged onset date and continued to apply for jobs; (3) the diagnostic evidence does not support the extent of plaintiff's alleged pain; and (4) plaintiff's claim that he used a cane for over a year was unsupported by the record. *Id.* at 32-33.

First, the ALJ found that plaintiff's allegations regarding the severity of his symptoms were undermined by the fact that he received "routine conservative treatment." AR at 32. In particular, the ALJ cited to the fact that plaintiff took only over-the-counter medication for his pain. *Id.* at 33. "[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Accordingly, in determining the credibility of a claimant, the "adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p.

In discussing plaintiff's use of over-the-counter mediation, the ALJ noted

that although plaintiff is homeless, "there is no proof [he] could not have obtained no cost medical care as necessary given the extent of his alleged poverty." AR at 33. This assertion ignores evidence in the record to the contrary. Plaintiff testified that he takes Tylenol and Motrin for his pain because it is "the only thing [he] can get [his] hands on." *Id.* at 51. Additionally, the record indicates that plaintiff does not have medical insurance and does not have a driver's license. *Id.* at 51-52. This constitutes "information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment." *See* SSR 96-7p. And plaintiff's failure to seek treatment due to his inability to pay cannot support an adverse credibility determination. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.").

      Moreover the ALJ's assertion that there is "no proof" indicates it was unclear to the ALJ why plaintiff failed to seek more aggressive treatment or whether plaintiff was able to obtain no cost care. In such circumstances, the ALJ had a duty to develop the record. *See Tonapetyan*, 242 F.3d at 1150; SSR 96-7p ("When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements."). But here, the ALJ did not ask plaintiff about his ability to seek no-cost medical care, nor does it appear that the ALJ considered evidence that would tend to explain any conservative treatment. Although defendant contends that plaintiff's ability to obtain no cost medical treatment is evidenced by the fact that he received pain medication when he went to the emergency room (D. Mem. at 6-7), the ALJ did not articulate this as a reason for discounting plaintiff's credibility and this court will not consider

defendant's post hoc rationalization. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ . . . and may not affirm the ALJ on a ground upon which he did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding the district court erred when it relied on evidence the ALJ did not discuss in affirming the ALJ 's credibility determination). Thus, plaintiff's conservative treatment was an improper basis for discrediting him.

The ALJ next noted that although plaintiff claimed that his onset date was August 20, 2008, there is no proof that his symptoms became disabling on that date. AR at 32. Instead, plaintiff first sought treatment in July 2009. *Id.* The ALJ also found it notable that plaintiff admitted he continued to look for work "at least through 2010," which suggests his impairments were not as severe as alleged. *Id.* "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But in making an adverse credibility determination, the ALJ must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight [given] to the individual's statements and the reasons for that weight." SSR 96-7p. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

With regard to plaintiff's apparent lack of treatment in 2008, the ALJ cannot draw an inference about plaintiff's failure to seek medical care without first considering evidence "that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p at 7-8. As discussed above, the ALJ here failed to consider such evidence. Nonetheless, given that plaintiff did

manage to seek medical treatment almost a year after he claims to have become disabled, it was appropriate for the ALJ to note that plaintiff waited for a year to seek treatment in assessing his credibility.

The ALJ's assertion that plaintiff admitted he continued to look for work at least through July 2010 is somewhat misleading. During the hearing, the ALJ asked plaintiff whether he had applied for other work since August 2008, his alleged onset date, to which plaintiff responded: "Yeah, I went online after, it was July of 2010, after I moved in with my girlfriend, but nothing, nobody ever applied, nothing in any way." AR at 46. This statement indicates that plaintiff applied for work in July 2010, but does not suggest that he sought employment from his alleged onset date "at least through July 2010" as the ALJ contends. Nevertheless, the ability to work while allegedly disabled is a clear and convincing reason to find claimant less credible. *See Bray*, 554 F.3d at 1227(a claimant's employment and seeking of work while allegedly disabled are proper grounds for discounting his testimony); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming the ALJ's adverse credibility finding due, in part, to claimant's holding himself out as available to work). Plaintiff's testimony that he sought work in July 2010 illustrates an attempt and indicates an ability to work while allegedly disabled. As such, this is a clear and convincing reason to discredit plaintiff.

The ALJ's next ground for making an adverse credibility finding was that the diagnostic evidence does not support the extent of pain that plaintiff alleges. AR at 32. Because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, (*Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence")), a finding that the claimant lacks credibility cannot be

premised wholly on a lack of medical support for the severity of his pain. *Lester*, 81 F.3d at 834; *Bunnell* , 947 F.2d at 343. Indeed, requiring plaintiff to provide proof of the intensity of his symptoms "would overlook the fact that pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina ascribed to the individual victim." *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986). Nonethesless, lack of supporting medical evidence is one factor the ALJ may consider in deciding whether a plaintiff is credible. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective medical evidence supporting symptoms is one factor in evaluating credibility).

The problem here is the ALJ's discussion of the medical evidence. First, the ALJ's recitation of plaintiff's August 2009 MRI results as showing "mild findings of degenerative disc disease and no neural foraminal narrowing" misstates the record to some extent. *See* AR at 32. Plaintiff's August 2009 MRI for lumbar spine revealed "mild to moderate facet hypertrophy from L2-3 through L4-5," "multilevel degenerative disc disease with minimal spinal canal narrowing at L2-3 through L3-4," and "no neural formainal narrowing." *Id.* at 275. More importantly, the ALJ's recitation of the medical evidence, with no further analysis, leaves it unclear how the MRI results are inconsistent with plaintiff's subjective pain testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *Bunnell*, 947 F.2d at 346 (the court "should not be forced to speculate as to the grounds for an adjudicator's rejection of claimant's allegations of disabling pain"); *see also* SSR 96-7p.

Similarly, the ALJ merely offers a recitation of the medical records from 2011 (*see* AR at 32) and fails to indicate how "mild degenerative disc space

narrowing with anterior osteophyte formation at L2-L3" (*id.* at 346) or "mild to moderate spinal canal stenosis" (*id.* at 353) are inconsistent with plaintiff's subjective pain testimony. Again, this recitation of diagnoses without more does not provide the specific findings necessary to enable this court to determine the reasons for the ALJ's adverse credibility determination. *See* SSR 96-7p; *Lester*, 81 F.3d at 834. Thus, the claimed lack of objective medical evidence is not a clear and convincing reason.

Lastly, the ALJ found that plaintiff's testimony at the hearing that he had used a cane for approximately one year was unsubstantiated in the record, "particularly in the chiropractic treatment notes." AR at 33 (citing *id.* at 306-344). But the chiropractic records to which the ALJ cites are made up of check-the-box forms, indicating subjective complaints and objective assessments from each of plaintiff's appointments. *See id.* at 306-344. There is no designated box on the forms, or a place for additional observations, where use of an ambulatory assistive device would be noted. *See id.* Thus, plaintiff's use of a cane without documentation in his chiropractic records is not a clear and convincing reasons for discounting his credibility.

Because the only reasons provided by the ALJ for discounting plaintiff's credibility that this court finds to be clear and convincing are plaintiff's failure to seek treatment for almost a year following his alleged disability onset date and plaintiff's attempt to gain employment well into his alleged period of disability, the final question is whether these reasons constitute substantial evidence to support the ALJ's adverse credibility determination. *See Mayes*, 276 F.3d at 458-59. Having considered the evidence as a whole, the court finds they do not. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th

cir. 1985) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)).  The Ninth Circuit has found substantial evidence standard satisfied where an ALJ provides multiple valid reasons for discounting plaintiff's credibility.  *See e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (combination of plaintiff waiting to seek treatment, non-treating physician's opinion that plaintiff was not credible, and contradictions in plaintiff's testimony about activities of daily living constituted substantial evidence); *Thomas*, 278 F.3d at 959 (plaintiff's poor work history, ability to perform daily activities that conflicted with testimony, and lack of candor constituted substantial evidence in support of an adverse credibility determination).  But here, although the ALJ's adverse credibility determination was ostensibly supported by multiple reasons, most of them were not valid as articulated by the ALJ.  This calls into question the validity of the ALJ's entire credibility assessment.

       Lastly, the court notes that in the ALJ's discussion of plaintiff's RFC, the ALJ concludes that regardless of his adverse credibility determination, he gives plaintiff "the benefit of the doubt" and incorporates his allegations into the RFC by limiting plaintiff to occasional postural activities; precluding plaintiff from climbing ladders, ropes, or scaffolds; and precluding plaintiff from environments of unprotected heights or dangerous machinery.  AR at 33.  But the accommodations the ALJ purports to provide in the RFC bear no apparent relation to plaintiff's subjective pain complaints, and the ALJ has offered no further explanation as to how the RFC accounts for plaintiff's subjective pain testimony.  Thus, the court is unable to discern whether the above discussed errors are harmless.  As such, this case must be remanded to the ALJ to make adequate findings.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in discounting plaintiff's credibility. On remand, the ALJ shall first reconsider plaintiff's subjective complaints, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

/ / /

/ / /

/ / /

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 29, 2014

/s/ Sheri Pym

SHERI PYM
United States Magistrate Judge